# SEALED

U. S. Department of Justice
*United States Attorney*
*District of Nevada*
333 Las Vegas Blvd., S., Suite 5000
Las Vegas, NV 89101

GREGORY A BROWER
United States Attorney
RUSSELL E. MARSH
Chief, Criminal Division
NICHOLAS D. DICKINSON
Assistant United States Attorney
Lloyd D. George U.S. Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

JAY R. NANAVATI
TIMOTHY J. STOCKWELL
Trial Attorneys, Tax Division
United States Department of Justice
Washington, DC 20530
(202) 514-5762

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
# -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> PLAINTIFF, <br><br> vs. <br><br> ALAN L. RODRIGUES, <br> WESTON J. COOLIDGE, and <br> JOSEPH PROKOP, <br><br> DEFENDANTS. | CRIMINAL INDICTMENT <br><br> 2:09-CR-_022_ <br><br> **VIOLATIONS:** <br> Count 1: 18 U.S.C. § 371 (*Klein*) (Conspiracy to Defraud the United States by Impairing and Impeding the Internal Revenue Service) <br> Counts 2-16: 26 U.S.C. § 7206(2) (Aiding in the Preparation of Materially False Income Tax Returns) <br> Counts 17-21: 18 U.S.C. § 1341 (Mail Fraud) |

**THE GRAND JURY CHARGES THAT:**

### BACKGROUND

Entities

1.  National Audit Defense Network ("NADN") was a corporation formed in 1996 in the State of Nevada. Initially, NADN's business was limited to representing clients

during the course of Internal Revenue Service ("IRS") audits. Subsequently, NADN expanded the services that it provided to its clients to include the preparation of income tax returns and the incorporation of business entities. In or about early 2001, NADN began to offer for sale to its clients an internet shopping web site called Tax Break 2000. NADN's offices were located in Las Vegas, Nevada, at 4330 South Valley View Boulevard. NADN marketed its services nationwide through radio advertisements and promotional appearances on talk radio programs.

2.   Oryan Management and Financial Services ("Oryan") was a sole proprietorship operating in Upland, California, that created an internet shopping web site called Tax Break 2000 and that paid NADN a commission to handle the sales of Tax Break 2000. Oryan became a part of Free Trade Enterprises, Inc., in September 2002.

3.   The Internal Revenue Service ("IRS") was an agency within the United States Department of the Treasury.

Defendants

4.   Defendant **ALAN L. RODRIGUES ("RODRIGUES")**, a former pit boss and casino owner from Henderson, Nevada, began working for NADN in 1999. He was NADN's general manager from at least early 2002 until NADN ceased doing business on May 27, 2004. In that role, he oversaw all of NADN's daily operations, including the sale of Tax Break 2000.

5.   Defendant **WESTON J. COOLIDGE ("COOLIDGE")**, a businessman from Las Vegas, Nevada, was NADN's chairman and president from on or about March 12, 2002, until NADN ceased doing business on May 27, 2004. As chairman and president, Defendant **COOLIDGE** supervised **RODRIGUES** in overseeing NADN's daily operations.

6.   Defendant **JOSEPH PROKOP ("PROKOP")**, a former National Football League punter from Upland, California, was the national marketing director for Oryan from

2

at least 2000 until 2004. He was the liaison between Oryan and NADN and trained NADN's sales staff to sell Tax Break 2000 to NADN's customers.

Scheme

7. In the year 2000, co-conspirator Daniel Porter ("Porter"), the sole proprietor of Oryan, created Tax Break 2000. In or about early 2001, Porter, on behalf of Oryan, approached Defendant **RODRIGUES** and other co-conspirators known to the Grand Jury with a proposal that NADN sell Tax Break 2000 to its customers. Approximately two weeks later, Porter, on behalf of Oryan, entered into an agreement with NADN through Defendant **RODRIGUES** and other co-conspirators known to the Grand Jury under which NADN would sell Tax Break 2000 for a sales commission of 60 percent of the sales price, with Oryan receiving the other 40 percent.

8. In or about early 2001, NADN began selling Tax Break 2000, variously called tb2000.com, shopn2000.com, and mallforall.com.

9. Tax Break 2000 was a shopping web site that the defendants fraudulently claimed would allow customers to claim legitimate income tax credits and deductions under the Americans with Disabilities Act of 1990 ("ADA") and the Internal Revenue Code.

10. The ADA includes a provision at 26 U.S.C. § 44 that provides a "disabled access credit" to help offset necessary, reasonable expenditures made by eligible small businesses to comply with the ADA's requirement that their facilities be accessible to disabled persons. These expenditures include amounts paid to remove architectural barriers, to remove communication barriers, to provide interpreters, to acquire or to modify equipment, or to provide other similar services, modifications, materials, or equipment.

11. From 2001 through 2004, the defendants caused NADN to sell Tax Break 2000 approximately 21,610 times to customers around the country.

3

## COUNT ONE
### 18 U.S.C. § 371
[Conspiracy to Defraud the United States by Impairing and Impeding the Internal Revenue Service]

12. Paragraphs 1 through 11 are incorporated as though fully set out herein.

13. Beginning no later than early 2001, the exact date being unknown to the Grand Jury, and continuing through the date of this Indictment, within the District of Nevada and elsewhere, the Defendants,

**ALAN L. RODRIGUES,
WESTON J. COOLIDGE, and
JOSEPH PROKOP,**

knowingly and intentionally conspired and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to defraud the United States by deceitful and dishonest means for the purpose of impeding, impairing, obstructing, and defeating the lawful government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of income taxes.

### MANNER AND MEANS

Among the manner and means by which Defendants **RODRIGUES**, **COOLIDGE**, and **PROKOP**, and their co-conspirators carried out the conspiracy were the following:

14. They created Tax Break 2000 as a web site that was not accessible to the disabled so that they could sell separate modifications to each individual customer that purported to make the web site accessible to the disabled.

15. They falsely told customers that purchasing the modifications entitled them to a lawful income tax credit and deduction for having purportedly made their web sites accessible to the disabled.

4

16. They chose the sale price for the modifications solely to maximize the fraudulent income tax credits and deductions.

17. They induced customers to sign purported promissory notes for approximately 80% of the $10,475.00 purchase price of the modifications, when they had no expectation that the customers pay off the purported promissory notes.

18. They paid attorneys to write favorable opinion letters about Tax Break 2000 to refute a legal memorandum in which NADN's own tax experts, led by Robert Stovall ("Stovall"), determined that Tax Break 2000 was illegal and could subject those who sold it to criminal penalties (the "Stovall memorandum").

19. They created false IRS Forms 1099 to create the appearance that customers' web sites were generating commission income and that the purported promissory notes were being paid off with this income.

20. They prepared false tax returns on their customers' behalf.

### OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, at least one of the Defendants or co-conspirators committed overt acts in the District of Nevada and elsewhere, including the following:

23. The defendants caused NADN to sell Tax Break 2000 to, among others, the following customers:

   a. J.A. & M.A., on or about October 29, 2002.
   b. P.B., on or about December 20, 2002.
   c. P.B., on or about January 30, 2003.
   d. P.B., on or about January 23, 2004.
   e. J.B. & K.B., on or about December 5, 2002.
   f. D.E. & J.E., on or about September 11, 2002.

5

g.  D.E. & J.E., on or about March 4, 2003.
h.  R.G., on or about December 4, 2002.
i.  R.G., on or about March 31, 2003.
j.  R.G., on or about December 30, 2003.
k.  S.G. & E.G., on or about December 12, 2002.
l.  S.G. & E.G., on or about September 4, 2003.
m.  S.G. & E.G., on or about October 3, 2003.
n.  R.H. and J.H., on or about April 9, 2003.
o.  R.H. & J.H., on or about December 18, 2003.
p.  R.H. & J.H., on or about December 31, 2003.
q.  R.H. & J.H., on or about January 7, 2004.
r.  R.H. & J.H., on or about January 12, 2004.
s.  R.H. & J.H., on or about January 20, 2004.
t.  R.H. & J.H., on or about January 26, 2004.
u.  R.H. & J.H., on or about February 6, 2004.
v.  J.H., on or about December 23, 2002.
w.  J.J., on or about December 3, 2002.
x.  J.J., on or about January 12, 2004.
y.  M.K., on or about May 1, 2003.
z.  M.K., on or about May 30, 2003.
aa.  M.K., on or about June 18, 2003.
bb.  A.L. & P.L., on or about December 16, 2003.
cc.  N.M., on or about January 7, 2003.
dd.  A.P. & C.P., on or about December 31, 2003.
ee.  H.R., on or about January 9, 2002.

      ff.      H.R., on or about January 10, 2003.

24. In or about April or May 2001, Defendant **RODRIGUES** met with Porter to decide how to refute the Stovall memorandum.

25. In or about June 2001, Defendant **RODRIGUES** caused NADN to pay, together with Porter, $25,000.00 to Attorney A to write an opinion letter to refute the Stovall memorandum.

26. In or about June or July 2001, Attorney A gave to Defendant **RODRIGUES** an opinion letter that said that Tax Break 2000 had a 50 percent chance of surviving the IRS's scrutiny.

27. In or about June or July 2001, Defendant **RODRIGUES** told Attorney A that a 50 percent chance was not sufficient and that Attorney A needed to re-write the letter to say that Tax Break 2000 had a two-in-three chance of surviving the IRS's scrutiny.

28. On or about July 28, 2001, Defendant **RODRIGUES** and other co-conspirators known to the Grand Jury distributed copies of Attorney A's altered opinion letter to NADN employees.

29. On or about July 24, 2002, during a meeting at the Rio Hotel & Casino in Las Vegas, Nevada, Defendants **RODRIGUES** and **COOLIDGE** directed Porter and Defendant **PROKOP** not to disclose to NADN's employees that the IRS had just executed a search warrant at Oryan's offices on July 22, 2002.

30. On or about July 24, 2002, during the meeting at the Rio Hotel & Casino in Las Vegas, Nevada, Defendant **COOLIDGE** responded to Porter's decision to close down Oryan by telling Porter not to close down Oryan because Defendant **COOLIDGE** would find a person to buy Oryan from Porter.

. . .

. . .

33. In or about November 2002, Defendants **RODRIGUES** and **COOLIDGE** caused NADN to pay $20,000.00 to Attorney B to write an opinion letter to refute the Stovall memorandum.

35. In or about February or March 2003, Attorney B personally delivered to Defendants **RODRIGUES** and **COOLIDGE** a favorable opinion letter on Tax Break 2000, back-dated to December 27, 2002, that was a near verbatim copy of Attorney A's favorable opinion letter.

36. In or about January 2003, Defendants **RODRIGUES** and **COOLIDGE**, Porter, and other persons known to the Grand Jury, met at an office in Las Vegas, Nevada, and decided to create false Forms 1099 to create the appearance that customers' web sites were generating commission income and that the purported promissory notes were being paid off with this income.

37. In or about March 2004, Defendant **COOLIDGE** and other persons known and unknown to the Grand Jury created false invoices to create the appearance that payments were being made to Oryan to pay off the purported promissory notes.

38. As additional overt acts, the allegations in Counts 2-19 are incorporated by reference as if fully set forth herein, that is, aiding and assisting in the preparation and filing of each of the separate tax returns.

39. As additional overt acts, the allegations in Counts 20-24 are incorporated by reference as if fully set forth herein, that is, knowingly causing to be sent, delivered, and moved by the United States Postal Service and by a commercial interstate carrier U.S. Individual Income Tax Returns, Forms 1040, either individual or joint, which were false and fraudulent as to material matters. All in violation of Title 18, United States Code, Section 371.

. . .

## COUNTS TWO THROUGH SIXTEEN
26 U.S.C. § 7206(2)
[Aid in the Preparation of Materially False Income Tax Returns]

40. The allegations of paragraphs 1 through 39 above are repeated and re-alleged in Counts 2 through 18 of this Indictment, as though fully set forth herein.

41. On or about the dates hereinafter set forth, in the District of Nevada, the Defendants,

**ALAN L. RODRIGUES,
WESTON J. COOLIDGE, and
JOSEPH PROKOP,**

willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service, of U.S. Individual Income Tax Returns, Forms 1040, either individual or joint, for the taxpayers and calendar years hereinafter specified, which were false and fraudulent as to material matters, in that the tax returns reported "total eligible access expenditures" on Line 1 and "current year credit" on Line 8 of IRS Form 8826, entitled Disabled Access Credit, which was attached to and made part of the taxpayers' IRS Form 1040, entitled U.S. Individual Income Tax Return. That purported expenditure and credit, related to the taxpayers' purchase of Tax Break 2000, resulted in (A) an allowable tax credit that was thereafter entered on Line 53 of the 2002 IRS Form 1040, Line 52 of the 2003 IRS Form 1040, and on subsequent years' IRS Forms 1040, and (B) a business expense that was reported on Line 27 of IRS Schedule C, entitled Profit or Loss from Business (Sole Proprietorship), of the 2002 and 2003 IRS Forms 1040. These purported allowable tax credits and business expenses reduced the taxpayers' income tax due for 2002, 2003, and subsequent years, whereas Defendants knew that the said taxpayers were not eligible for the allowable tax credits and business expenses in the amounts claimed. The following chart reflects the taxpayers' claimed current year credits on Line 8 of IRS Forms

9

8826, allowable tax credits related to Tax Break 2000 on IRS Forms 1040, and business expenses related to Tax Break 2000 on IRS Schedules C, for tax years 2002 and 2003.

| COUNT | DATE OF OFFENSE | TAXPAYERS | TAX YEAR | FORM 8826 CURRENT YEAR CREDIT | ALLOW-ABLE TAX CREDIT | FALSE FORM 1040 LINE | BUS. EXPENSE | FALSE SCH. C LINE |
|---|---|---|---|---|---|---|---|---|
| 2 | December 22, 2003 | J.A. & M.A. | 2002 | $5,000 | $5,000 | Line 53 | $5,475 | Line 27 |
| 3 | October 20, 2003 | P.B. | 2002 | $5,000 | $1,419 | Line 53 | $5,475 | Line 27 |
| 4 | April 15, 2003 | J.B. & K.B. | 2002 | $5,000 | $240 | Line 53 | $5,475 | Line 27 |
| 5 | June 5, 2003 | D.E. & J.E. | 2002 | $5,000 | $2,623 | Line 53 | $5,475 | Line 27 |
| 6 | April 15, 2003 | R.G. | 2002 | $2,612 | $2,612 | Line 53 | $2,863 | Line 27 |
| 7 | April 15, 2003 | S.G. & E.G. | 2002 | $5,000 | $116 | Line 53 | $5,475 | Line 27 |
| 8 | May 19, 2004 | R.H. & J.H. | 2003 | N/A | $0 | N/A | $4990 | Line 27 |
| 9 | April 15, 2004 | J.H. | 2003 | $5,000 | $4,330 | Line 52 | $5,475 | Line 27 |
| 10 | April 15, 2003 | J.J. | 2002 | N/A | $4,670 | Line 53 | $5,475 | Line 27 |
| 11 | April 15, 2004 | J.J. | 2003 | $5,000 | $5,330 | Line 52 | $5,475 | Line 27 |
| 12 | April 15, 2004 | M.K. | 2003 | $5,000 | $2,578 | Line 52 | $5,475 | Line 27 |
| 13 | August 20, 2004 | N.M. | 2003 | $5,000 | $2,118 | Line 52 | $5,475 | Line 27 |
| 14 | April 15, 2004 | A.P. & C.P. | 2003 | $5,000 | $2,739 | Line 52 | $5,475 | Line 27 |
| 15 | April 15, 2003 | H.R. | 2002 | $5,000 | $5,000 | Line 53 | $5,475 | Line 27 |
| 16 | April 15, 2004 | H.R. | 2003 | $5,000 | $5,000 | Line 52 | $5,475 | Line 27 |

42.  All in violation of Title 26, United States Code, Section 7206(2) and Title 18, United States Code, Section 2.

## COUNTS SEVENTEEN THROUGH TWENTY-ONE
18 U.S.C. § 1341
[Mail Fraud]

43.  The allegations of paragraphs 1 through 42 above are repeated and re-alleged in Counts 19 through 23 of this Indictment, as though fully set forth herein.

44.  On or about the dates hereinafter set forth, in the District of Nevada, the Defendants,

**ALAN L RODRIGUES,<br>WESTON J. COOLIDGE, and<br>JOSEPH PROKOP,**

devised a scheme or artifice to defraud the individuals hereinafter specified and to obtain monies by means of materially false and fraudulent pretenses from those individuals by representing that Tax Break 2000 was a lawful means of securing a tax credit and a tax deduction, when the defendants knew that Tax Break 2000 could not provide the tax benefits claimed in the marketing materials and as represented to customers.

45.  It was part of the scheme and artifice to defraud that Defendants **RODRIGUES**, **COOLIDGE**, and **PROKOP**, did knowingly cause to be sent, delivered, and moved by the United States Postal Service and by a commercial interstate carrier, to the taxpayers and the IRS as hereinafter specified, U.S. Individual Income Tax Returns, Forms 1040, either individual or joint, which were false and fraudulent as to material matters, each mailing being a separate count of this Indictment as listed below:

. . .

. . .

. . .

. . .

11

| COUNT | DATE OF OFFENSE | ITEM | FROM/TO |
|---|---|---|---|
| 17 | February 29, 2004 | 2003 U.S. Individual Income Tax Return, Form 1040, of H.R. | Reno, Nevada (residence), to Fresno, California (IRS Service Center)-self prep |
| 18 | March 16, 2004 | 2003 U.S. Individual Income Tax Return, Form 1040, of M.K. | Las Vegas, Nevada (NADN), to North Las Vegas, Nevada (residence) |
| 19 | April 6, 2004 | 2003 U.S. Individual Income Tax Return, Form 1040, of J.J. | Las Vegas, Nevada (NADN), to Sacramento, California (residence) |
| 20 | April 14, 2004 | 2003 U.S. Individual Income Tax Return, Form 1040, of J.H. | Las Vegas, Nevada (residence), to Fresno, California (IRS Service Center) |
| 21 | March 17, 2004 | 2003 U.S. Individual Income Tax Return, Form 1040, of A.P & C.P, | Henderson, Nevada (residence), to Fresno, California (IRS Service Center) |

46.    All in violation of Title 18, United States Code, Sections 1341 and 2.

**DATED:** this __27__ day of January 2009.

**A TRUE BILL:**

/s/
FOREPERSON OF THE GRAND JURY

GREGORY A. BROWER
United States Attorney

JAY R. NANAVATI
TIMOTHY J. STOCKWELL
Trial Attorneys

12