1  FRANNY A. FORSMAN
   Federal Public Defender
2  State Bar No. 000014
   WILLIAM CARRICO
3  Assistant Federal Public Defender
   State Bar No. 3042
4  330 South Third Street, Ste. 700
   Las Vegas, Nevada 89101
5  (702) 388-6577
   (Fax) 388-6261
6
   Counsel for Weston Coolidge
7

8                    UNITED STATES DISTRICT COURT

9                         DISTRICT OF NEVADA

10

11  UNITED STATES OF AMERICA,          CASE NO.:  2:09-cr-022-RCJ-RJJ

12              Plaintiff,             MOTION FOR STATUS HEARING

13  vs.

14  ALAN L. RODRIGUES, WESTON
    COOLIDGE, and JOSEPH PROKOP,
15
                Defendant.
16
    CERTIFICATION: This Motion for a Status Hearing is being timely filed.
17
            Alan Rodrigues, through his attorney Karen Winkler, Weston Coolidge, through his
18
    attorney William Carrico, and Joseph Prokop, through his attorney Travis Shetler, the named
19
    Defendants in this case, respectfully ask the Court to schedule a status hearing in this case for the
20
    purpose of clarification of outstanding discovery disputes and miscellaneous other procedural
21
    matters.
22
            This Motion is based upon Rule 17.1 of the Federal Rules of Criminal Procedure and
23
    the Court's discretionary authority to promote a fair and expeditious trial, as well as the following
24
    Memorandum of Points and Authorities.
25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DATED this 7th day of July, 2010.

FRANNY A. FORSMAN
Federal Public Defender

/s/ William C. Carrico

_____
WILLIAM C. CARRICO
Assistant Federal Public Defender

/s/ William C. Carrico for

_____
KAREN C. WINKLER
Counsel for Alan Rodrigues

/s/ William C. Carrico for

_____
TRAVIS SHELTER
 Counsel for Joseph Prokop

MEMORANDUM OF POINTS AND AUTHORITIES

I.

Statement of Facts Relevant To Motion

The Parties last appeared for a status conference on March 31, 2010.  Topics left unresolved included progress on some discovery issues.  In particular, the Court urged that more attention be paid to the matter of an estimated 4,000 boxes of documents as well as issues surrounding I.R.S. audit files.  At the conclusion of the hearing, this Court ordered the Parties to file discovery motions.  In addition, it was requested that the Parties file a stipulation as to the Speedy Trial Act.  Such stipulation was filed on April 5, 2010 and granted by the Court on April 7, 2010.

The defense jointly submitted a global discovery motion on April 15, 2010.  The government filed a response on April 22, 2010.  Among the most contested of issues remains the government's renewed arguments regarding the compelled production of the audit files of the "Mall for All" taxpayers.  The government's pleadings raised multiple arguments based upon various theories.  The primary argument appears to be that essentially the audit files are not in the possession of the Justice Department's Tax Division, but rather are in the possession of a third party- the Civil Division of the Internal Revenue Service.  The government also argued that the defense had not previously requested such files informally.  If the files were found to be in the custody of a third party, the government argued, then the defendants were required to meet a "materiality" standard. Finally, the government raised §6103 and privacy concerns as additional grounds for not producing audit information.

As the Parties were submitting various pleadings outlining their differences, such as the one set forth above, attorney Travis Shetler, counsel for Defendant Joseph Prokop, made a trip to San Diego, California.  Mr. Shetler made repeated attempts to arrange a brief assessment of about 60 boxes of material that are in the custody of Mr. Chris Hawkins, the attorney for the NADN Bankruptcy Trustee.  Both Mr. Hawkins and the 60 boxes of documents are located in San Diego. These documents were represented by the government to be from the company "Free Trade Enterprises."  That company was the successor-in-interest to Oryan Management and Financial . . .

Services, which had been Defendant Prokop's employer and the company that created and managed the Mall for All product.

Prior to Mr. Shetler's trip, the Trustee seemed cooperative, but on April 15, 2010, Mr. Shetler's Legal Assistant received a phone call from Mr. Hawkins saying that he would need a subpoena. This effectively prevented any effort to assess the documents as to whether they should be copied or were relevant to the Defense. Prior to Mr. Shetler's departure from San Diego however, the Defendants filed, on April 19, 2010, an Ex Parte Request & Order to access discovery. This Request remains outstanding should the Defendants seek to renew it. For its part, the government has limited its Response to that portion of the Discovery Motion, where the Defendants complained of obstruction and non-cooperation on the part of the Trustee. The government's basic position is that they have no authority to direct the actions of the Trustee.

On May 5, 2010, the government filed a motion for leave to file a sur-reply regarding these and other continuing discovery disputes. Authority to file the sur-reply was granted by this Court on June 1, 2010. In the Sur-Reply another effort was made to support the government's argument that the "civil side of the IRS" is a separate party relative to the litigation and that only it has possession of the disputed audit information. Hence, it is the government's contention that this alone makes the civil side of the IRS a third party and not part of the 'prosecution team'.

On May 18, 2010, the Defendants, in an effort to move the litigation forward and encourage progress on all matters, (apart from the issue of obtaining the audit files), took an extraordinary step. In an informal letter sent to the prosecution and this Court, the defense proposed a compromise. The defense offered to temporarily withdraw that portion of their motion for the immediate production of the IRS audit files. In exchange, the defense requested swift access to all other non-controversial discovery material. In addition, the defense would prefer that the government agree not to oppose the Defendants' efforts to obtain access to material in custody of the Trustee in Bankruptcy. To date, there has no acknowledgment of this proposal from the government.

After a reasonable period, the Defendants concluded that the litigation would not proceed without a determination on the issue of the audit files. Consequently, on June 2, 2010, the

defendants filed a Sur-Reply to the government's Sur-Reply.  In that pleading, the Defendants pointed out how the civil side of the IRS has repeatedly pooled their efforts with the Department of Justice throughout the extensive investigations of these Defendants and the affiliated companies.

Regarding the boxes of material obtained by the government from the Trustee, and that was formally stored in six storage units, the government has proposed new conditions for the treatment of those materials in e-mail communiques sent on April 30, 2010, (then re-sent on June 18, 2010).  Referring to the total number of boxes put together from loose material and old Trustee boxes from the storage units, the government asserted that the defense had been granted access to the 1740 boxes since December of 2009, because it was impractical to supervise our review otherwise.  The government then proposed new guidelines to adhere to the handling of the material. In order to maintain custody of the material, it was to be agreed that none of it would be altered or destroyed.  In addition, (demonstrating a lack of knowledge as to the condition in which the material was originally found), the defense was to agree that anything removed from a container must be returned to that original container.  Also, the defense was to return all original material to the government, or grant the government access, for its own review.  The final two conditions were that the government would be provided with copies of any "scanned" material, and that the Defendants would be barred from unsupervised access to the material.

Contemporaneously with the submission of this Motion, the defense has learned of the approval of funds necessary to compensate vendors, some of which deal directly with the material addressed above.  Until now, however the defense felt ill-suited to be able to comply with the government's conditions, especially that the government get "scanned" materials and granting the government full access to the originals.  Consequently, the defense responded to the government's e-mails in a letter dated June 21, 2010.

Apart from giving in to the temptation to remind the government of the poor condition in which this evidence was stored and delivered in December of 2009, the defense pointed out the not insignificant investment the defense had made in attempting to preserve it.  After a cursory review, the defense estimated approximately 750 boxes to be relevant to the defense.  In its letter, the defense pointed out that it was without funds, and in order to accommodate the

government's conditions in total, the defense relinquished complete custody of the material back to the government as soon as arrangement could be made to pick it up from the Defendants' vendor. For its part, the defense would ask that the identified documents be scanned by the government first as part of their review, and that the originals be preserved just as the government had suggested

On June 24, 2010, the defense received its response to the counterproposal regarding the 1740 boxes of material. The government replied that they did not find it necessary to retake possession of the boxes. Without addressing the Defendants' claim that they couldn't fully comply, the government now states that the intent of the communiques were only to provide some "commonsense safeguards" given the documents were in the unsupervised custody of the defense. If the material were to be released to the government however, it was the intention of the government to return the material to the custody of the Trustee. As the government perceived the issue, the cost and lack of value to the government prohibited any intention to scan or copy any aforementioned 750 boxes of documents the defense deemed relevant.

II.

Argument and Issues

As assessed by the defense, there exist sufficient outstanding issues so as to justify seeking guidance by the Court. These issues can be summarized as follows:

(1) can the government be compelled to turn over any portion of the audit files?;

(2) does the power of the court extend to being able to compel cooperation with reasonable discovery inquires by the Defendants of the Trustee in Bankruptcy for NADN?

(3) will the Court set forth guidelines for the further processing of material obtained from the six storage sheds, and

(4) can those guidelines apply with equal force any additional material obtained from the Trustee?

(5) will the Court rule on the remaining discovery requests presented in the Defendants' original discovery motion, or will further briefing be required on a particular issue?

Rule 17.1 of the Federal Rules of Criminal Procedure provides for a pretrial conference when the court believes it will be helpful in expediting a trial. This case has been declared a complex case, and facilitating resolution of issues is thus more of a responsibility for the

Parties than it may be in a normal case.  The decision to hold such a conference is within the discretion of this Court.  *See Sanders v. Union Pac. R.R. Co., 193 F.3d 1080 (9th Cir. 1999)(en. banc.).*

As demonstrated in this pleading, the requested status conference would be most productive if used to help complete discovery.  It also has the potential to narrow any later disputes over authenticity and perhaps admissibility of certain evidence.  *See United States v. Smith, 65 F.R.D. 464, 470 (N.D. Ga. 1974).*  The list of disputed items may be shorter and more easily resolved if each Party is given their opportunity to clarify their position on the record before the Court.  As is oftentimes the case, compromise is easier to reach if the weakness of any one position can be explored in conference by the Parties and the Court then presented with an opportunity to settle the matter.

CONCLUSION

Wherefore, in light of the foregoing points, authorities and arguments, the Defendants named in this case hereby jointly request a status hearing pretrial with the Court, to be scheduled at its convenience.

DATED this 7th day of July, 2010.

FRANNY A. FORSMAN
Federal Public Defender

*/s/ William C. Carrico*

WILLIAM C. CARRICO
Assistant Federal Public Defender

*/s/ William C. Carrico for*

KAREN C. WINKLER
Counsel for Alan Rodrigues

*/s/ William C. Carrico for*

TRAVIS SHELTER
Counsel for Joseph Prokop

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF ELECTRONIC SERVICE

The undersigned hereby certifies that she is an employee of the Law Offices of the Federal Public Defender for the District of Nevada and is a person of such age and discretion as to be competent to serve papers.

That on July 7, 2010, she served an electronic copy of the above and foregoing **Motion for Status Hearing,** by electronic service (ECF) to the person named below:

DANIEL G. BOGDEN
United States Attorney
RUSSELL E. MARSH
Chief, Criminal Division
NICHOLAS D. DICKINSON
Assistant Federal Public Defender
333 Las Vegas Blvd. So., 5th Floor
Las Vegas, Nevada 89101

*/s/ Blanca Lenzi*

_____
Employee of the Federal Public Defender

8