**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ALAN L. RODRIGUES, ) <br> WESTON J. COOLIDGE, and ) <br> JOSEPH PROKOP ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. 2:09-cr-00022-MMD-GWF <br><br> **ORDER** |

This matter is before the Court on Defendant Weston Coolidge's Motion to Sever His Trial (#272) filed on January 25, 2014. Defendant Alan Rodrigues filed a Joinder in Defendant Coolidge's Motion (#277) on February 11, 2014. The Government filed its Opposition to Defendant Coolidge's Motion to Sever (#279) on February 11, 2014. Defendant Coolidge filed his Reply (#286) on February 18, 2014. Also before the Court is Defendant Joseph Prokop's Motion to Sever Trial (#280) filed on February 12, 2014. Defendant Rodrigues filed a Joinder in Defendant Prokop's Motion to Sever (#282) on February 13, 2014. The Government filed its Opposition to Defendant Prokop's Motion to Sever (#290) on February 19, 2014. Defendant Prokop filed his Reply (#292) on February 24, 2014.

The Court conducted a hearing in this matter on February 25, 2014. Following the hearing, and at the Court's direction, the Government filed a Notice of Intent to Introduce Statements of the Defendants Potentially Subject to *Bruton* (#296). Defendants Coolidge and Prokop filed supplemental briefs, Docket Nos. 311 and 312, regarding the additional statements identified by the Government. The Government thereafter filed its responses to Defendants Prokop's and Coolidge's supplemental briefs. Docket Nos. 324 and 326.

# BACKGROUND

The indictment in this case charges Defendants Rodrigues, Coolidge and Prokop with conspiracy to defraud the United States by impairing and impeding the Internal Revenue Service in violation of 18 U.S.C. § 371, aiding in the preparation of materially false income tax returns in violation of 26 U.S.C. § 7206(2), and mail fraud in violation of 18 U.S.C. § 1341.

The indictment alleges that National Audit Defense Network ("NADN"), a Nevada corporation formed in 1996, initially conducted a business limited to representing clients during IRS audits. NADN later expanded its business to include preparing income tax returns and incorporating business entities. The indictment alleges that in or about early 2001, NADN began offering for sale to its clients an internet website called Tax Break 2000.[1] *Indictment (#1)*, ¶ 1. Another entity, Oryan Management and Financial Services ("Oryan"), created the Tax Break 2000 website and paid commissions to NADN to handle the sales of Tax Break 2000. ¶ 2. The indictment alleges that Defendant Alan Rodrigues was NADN's general manager from at least early 2002 until it ceased doing business on May 27, 2004. Defendant Weston J. Coolidge was NADN's chairman and president from on or about March 12, 2002 until it ceased doing business. ¶¶ 4, 5. Defendant Joseph Prokop was the national marketing director for Oryan from 2000 until 2004. The indictment further alleges that Defendant Prokop was the liaison between Oryan and NADN, and trained NADN's sales staff to sell Tax Break 2000 to its customers. ¶ 6.

The indictment alleges that in the year 2000, Daniel Porter, who was then the sole-proprietor of Oryan, created Tax Break 2000. Porter proposed to Defendant Rodrigues and other co-conspirators that NADN sell Tax Break 2000. Shortly thereafter, Oryan and NADN entered into an agreement pursuant to which NADN would receive a 60 percent commission on its sales of Tax Break 2000 and Oryan would receive the other 40 percent. ¶ 7. The indictment alleges that Defendants fraudulently claimed that the purchase of the Tax Break 2000 website and modifications thereto would allow customers to claim legitimate income tax credits and deductions under the Americans with Disabilities Act ("ADA") and the Internal Revenue Code. ¶ 9. In this

---

[1] The product was also allegedly marketed under other names, including "Mallforall."

regard, 26 U.S.C. § 44 contains a provision which allows small businesses to claim a "disabled access credit" for expenses incurred in making their facilities accessible to disabled persons. ¶ 10. The Tax Break 2000 website, as sold, was not accessible to the disabled. The Defendants sold separate website modifications to each customer that purported to make the website accessible. Defendant falsely told customers that by purchasing the modifications, they would be entitled to the income tax credit and deduction. ¶¶ 14-15. The indictment further alleges that 80 percent of the purchase price for the modifications was represented by a promissory note executed by the customers, which they had no expectation of paying. This allowed the customers to claim tax credits or deductions based on the full amount of the purchase price without having paid most of that price. ¶¶ 16-17. The indictment alleges that Defendants also paid attorneys to write favorable opinion letters about Tax Break 2000 to refute a legal memorandum by NADN's own tax experts that Tax Break 2000 was illegal and could subject those who sold it to criminal penalties. ¶ 18.

On May 22, 2002, a government agent, acting in an undercover capacity and wearing a recording device, met with Defendant Prokop at his office in Upland, California. The undercover agent posed as the owner of an income tax preparation business in the Mid-West. The undercover agent engaged in a lengthy conversation with Defendant Prokop about the Tax Break 2000 product under the guise that she would sell it to her clients. During this conversation, Defendant Prokop allegedly made statements about Tax Break 2000 which revealed that it was a fraudulent device or scheme. Defendant Prokop also discussed NADN's role in the sale of Tax Break 2000, which also allegedly incriminated NADN and its principals, Defendants Rodrigues and Coolidge. *Motion to Sever (#272), Exhibit 19, Transcript of Conversation Between Prokop and UCA.*

Defendant Prokop was subsequently interviewed by Special Agents of the Internal Revenue Service, Criminal Investigation, on July 24, 2002. *Defendant Coolidge's Supplemental Brief (#311), Exhibit A.* He was again interviewed by an IRS revenue agent and staff attorney on March 18, 2004. *Id., Exhibit B.* Defendant Prokop testified at deposition during a bankruptcy proceeding on August 3, 2004. *Id., Exhibit C.* Defendant Prokop was also interviewed by an Assistant United States Attorney and IRS Special Agents on December 19, 2004, as part of a proffer session with the Government. *Id., Exhibit D.* During these interviews and deposition testimony, Mr. Prokop

discussed his roles in Oryan and NADN, his understanding of the Tax Break 2000 product and whether it was legal, and the roles or activities of Codefendants Coolidge and Rodrigues with respect to Oryan and NADN. The Government states that it may introduce against Mr. Prokop in its case-in-chief at trial, his statements during the July 24, 2002 and March 18, 2004 interviews and his August 2004 deposition testimony. The Government will only introduce Mr. Prokop's statements during the December 19, 2004 proffer interview in its rebuttal case if Mr. Prokop testifies contrary to those statements at trial. *Government's Notice of Intent (#296), pg. 4.*[2]

Defendant Coolidge argues that his trial should be severed from that of both Codefendants Prokop and Rodrigues. Coolidge asserts that "there is and will be a significant body of evidence that is admissible against Mr. Prokop that would not be admissible against Mr. Coolidge in a separate independent trial. This body of evidence includes statements made by government cooperating witness Daniel Porter to Prokop as well as statements made by Prokop to Porter prior to March 2002--the date when Coolidge became chief executive officer of NADN." *Motion to Sever (#272), pg. 5.* Next, Defendant Coolidge argues that the statements made by Defendant Prokop to the undercover agent on May 22, 2002 are inadmissible against Coolidge and introduction of these statements during a joint trial will violate his Sixth Amendment right to confront and cross-examine the witnesses against him. In his Supplemental Brief (#311), Coolidge further argues that trial should be severed based on the Government's intent to introduce the additional statements made by Prokop to IRS agents and Government attorneys, and during the bankruptcy deposition. Finally, Defendant Coolidge argues that he and the Codefendants have mutually antagonistic defenses, which will prejudice all Defendants if they are tried jointly. In this regard, Defendant Coolidge states that one alternative defense he intends to raise at trial is that Defendants Prokop and Rodrigues, together with Daniel Porter, conspired to conceal their fraudulent conduct from Coolidge both before and after he became the chief executive officer of

---

[2] The Government has identified additional statements made by Defendants Coolidge, Rodrigues and Prokop that it may introduce against them respectively at trial. *See Government's Notice of Intent to Introduce Statements of Defendants Potentially Subject to Bruton (#296).* The Defendants have not challenged the introduction of these other statements on *Bruton* grounds as part of their motions to sever.

NADN. *Id.*

Defendant Prokop's arguments for severance mirror those of Defendant Coolidge. He argues that there is a significant body of evidence that is admissible against Mr. Coolidge and Mr. Rodrigues that would not be admissible against Mr. Prokop in a separate trial. Defendant Prokop also states that he intends to "raise as a defense that Coolidge, Rodrigues and Porter conspired with each other to conceal from Prokop the legal and technical problems with Mallforall." *Prokop Motion to Sever (#280), pg. 8.* In his Supplemental Brief (#312), Defendant Prokop identifies only statements made by himself as additional grounds for severance.

Defendant Rodrigues adopts the arguments of both Codefendants' motions to sever. He does not point to any specific or separate facts supporting a claim of "antagonistic defenses," but states generally that a joint trial will rapidly degenerate "into a confusing exercise in 'finger pointing' between the Defendants." *Joinder (#277), pg. 2.* Defendant Rodrigues did not file a supplemental brief in response to the Government's Notice of Intent to Introduce Statements.

## DISCUSSION

Rule 8(b) of the Federal Rules of Criminal Procedure permits the joinder of defendants who have allegedly participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses. Codefendants jointly charged are, *prima facie*, to be jointly tried. *United States v. Mariscal*, 939 F.2d 884, 885 (9th Cir. 1991). This rule "should be construed broadly in favor of initial joinder." *United States v. Ford*, 632 F.2d 1354, 1373 (9th Cir.), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399 (1981). Joinder of charges against multiple defendants is particularly appropriate when the charges involve substantially overlapping evidence. *United States v. Vasquez–Velasco*, 15 F.3d 833, 844 (9th Cir. 1994). There is a strong preference for joint trials because separate trials would "impair both the efficiency and the fairness of the criminal justice system" by requiring the United States to "bring separate proceedings, presenting the same evidence again and again[.]" *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 1708 (1987). Joint trials also serve the interests of justice "by avoiding the scandal and inequity of inconsistent verdicts." *Id.* 481 U.S. at 211, 107 S.Ct. at 1709. *See also Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933, 937 (1993). The Ninth Circuit has also repeatedly stated that a joint

trial is particularly appropriate in a conspiracy case where the evidence of the individual conspirators' conduct and statements in furtherance of the conspiracy are likely to be admissible against all of defendants charged in the conspiracy. *United States v. Hernandez*, 952 F.2d 1110, 1114-15 (9th Cir. 1991); United *States v. Freeman*, 6 F.3d 586, 598 (9th Cir. 1993); and *United States v. Cruz*, 127 F.3d 791, 799 (9th Cir. 1997), *abrogated on other grounds by United States v. Jimenez Recio*, 537 U.S. 270, 123 S.Ct. 819 (2003).

Rule 14(a) of the Federal Rule of Criminal Procedure states that if joinder of offenses or defendants for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials or provide any other relief that justice requires. To obtain severance, a defendant must satisfy the "heavy burden" of showing that prejudice would result from joinder. *United States v. Sitton*, 968 F.2d 947, 961 (9th Cir. 1992). *United States v. Vaccaro*, 816 F.2d 443, 448 (9th Cir. 1987) notes that because some prejudice is inherent in any joinder of defendants, "if only 'some' prejudice is all that need be shown, few, if any, multiple defendant trials could be held." The Supreme Court in *Zafiro* stated that "[d]efendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." 506 U.S. at 540, 113 S.Ct. at 938. Severance should only be granted where there is a serious risk that a joint trial would either compromise a specific constitutional right of one of the defendants or prevent the jury from compartmentalizing the evidence as it relates to individual defendants. Even where the risk of prejudice seems high, such risk can often be cured by "less drastic measures, such as limiting instructions." *Zafiro*, 506 U.S. at 539.

The Ninth Circuit has developed a four-part test to aid the district court's determination of whether severance should be granted. These factors include: (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether the defendants can show with some particularity, a risk that joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocense. *United States v. Hernandez-Orellana*, 539

F.3d 994, 1001 (9th Cir. 2008), citing *United States v. Sullivan*, 522 F.3d 967, 981-82 (9th Cir. 2008). The most important factors are whether the jury can compartmentalize the evidence against each defendant and the judge's diligence in providing evidentiary instructions to the jury. *Sullivan*, 522 F.3d at 981-82.

### 1. Defendant's Argument That Severance Is Required Pursuant to *Bruton v. United States.*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy . . . the right to be confronted with the witnesses against him." In *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620 (1968), the Supreme Court held that the admission at trial of a non-testifying codefendant's confession which explicitly implicated the defendant violated the defendant's Sixth Amendment right to confront and cross-examine the witnesses against him. In so holding, the Court stated: "Despite the concededly clear instructions to the jury to disregard Evans' inadmissible hearsay evidence inculpating petitioner, in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." 391 U.S. at 137, 88 S.Ct. at 1628.

In *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702 (1987), the Court stated that *Bruton* recognized only a "narrow exception" to the general rule that a witness whose testimony is introduced at a joint trial is not considered to be a witness against the defendant if the jury is instructed to consider that evidence only against another defendant. The Court cited a number of examples in which it has upheld the introduction of evidence subject to limiting instructions. The general rule is predicated on the presumption that jurors will follow the instructions given to them. 481 U.S. at 206-07, 107 S.Ct. at 1707. Unlike the confession in *Bruton*, the redacted confession of the codefendant in *Richardson* did not directly implicate the defendant in the crime and did not even mention her existence. The Court held that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. 481 U.S. at 211, 107 S.Ct. at 1709. *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151 (1998) states, however, that simply redacting the defendant's name from the codefendant's

confession is not sufficient where there remains a direct and obvious inference that the other person implicated by the confession is the defendant.

The Ninth Circuit has held that a codefendant's statement that does not incriminate the defendant unless it is linked with other evidence introduced at trial, does not violate the defendant's Sixth Amendment rights. *United States v. Hoac*, 990 F.3d 1099, 1105 (9th Cir. 1993). In *United States v. Olano*, 62 F.3d 1180, 1195 (9th Cir. 1995), the defendants were jointly tried on charges of bank fraud. At trial, the court admitted hearsay statements made by codefendants who did not testify at trial and gave a limiting instruction that the statements could only be considered as evidence against the defendants who made the statements. In holding that the admission of these statements did not violate the defendant's Sixth Amendment rights, the court stated:

> None of the codefendants' statements incriminated Olano on their face. Unlike the full blown confession that was the subject of *Bruton*, the grand jury and deposition testimony of Hilling, Marler, and Gray that was read to the jury plainly did not have a sufficiently "devastating" or "powerful" inculpatory impact to be incriminating on its face. (citations omitted).

*See also United States v. Angwin*, 271 F.3d 786, 796 (9th Cir. 2001).

The application of *Bruton* has been further limited by the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004). *Crawford* held that under the Confrontation Clause, testimonial statements of witnesses absent from trial are admissible only where the declarant is unavailable and only when the defendant had a prior opportunity to cross-examine the declarant. *Crawford* indicated, but did not specifically hold, that non-testimonial hearsay statements are beyond the scope of the Confrontation Clause. The Court stated that in *White v. Illinois,* 502 U.S. 346, 352-53, 112 S.Ct. 736, 740-41 (1992), it had considered and rejected a proposal that the Confrontation Clause be applied only to testimonial statements. The Court stated: "Although our analysis in this case casts doubt on that holding, we need not definitively resolve whether it survives our decision today, because Sylvia Crawford's statement is testimonial under any definition." *Crawford*, 541 U.S. at 61, 124 S.Ct. at 1370.

Defendant Coolidge argues in his supplemental brief that *Crawford* did not reject application of the Confrontation Clause to non-testimonial hearsay statements. Although

1  conceding that in light of *Crawford*, other federal circuits have held that the Confrontation Clause
2  does not apply to non-testimonial statements, Defendant states that the Ninth Circuit has not so
3  held. *Supplemental Brief (#311), pgs. 2-4.* In *Whorton v. Bockting*, 549 U.S. 406, 413-14, 127
4  S.Ct. 1173, 1179 (2007), however, the Supreme Court noted its statement in *Crawford* that *Ohio v.*
5  *Roberts*, 448 U.S. 56, 100 S.Ct. 2531 (1980) (which established the standard that previously
6  governed application of the Confrontation Clause) potentially excluded too much testimony
7  because it imposed Confrontation Clause restrictions on nontestimonial hearsay not governed by
8  the Clause. After noting that *Crawford* is more restrictive than *Roberts* with respect to *testimonial*
9  out-of-court statements, the Court stated:

> But whatever improvement in reliability *Crawford* produced in this respect must be considered together with *Crawford's* elimination of Confrontation Clause protection against the admission of unreliable out-of-court nontestimonial statements. Under *Roberts*, an out-of-court nontestimonial statement not subject to prior cross-examination could not be admitted without a judicial determination regarding reliability. Under *Crawford*, on the other hand, the Confrontation Clause has no application to such statements and therefore permits their admission even if they lack indicia of reliability.

15  *Whorton*, 549 U.S. at 420, 127 S.Ct. at 1183.
16  In *United States v. Larson*, 495 F.3d 1094, 1099-1100 n. 4 (9th Cir. 2007), the Ninth Circuit
17  read this passage from *Whorton* as a clear statement that the Confrontation Clause does not apply to
18  non-testimonial statements. Other circuits agree with this interpretation of *Crawford*. *See United*
19  *States v. Castro-Davis*, 612 F.3d 53, 65 (1st Cir. 2010); *United States v. Smalls*, 605 F.2d 765, 768
20  n. 2 (10th Cir. 2010); and *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009). There is no
21  basis to believe the Ninth Circuit would now hold to the contrary.
22  *Crawford* stated that "testimonial" statements are those which a declarant would reasonably
23  expect to be used prosecutorially. 541 U.S. at 51, 124 S.Ct. at 1364. The Court did not provide a
24  comprehensive definition of the term "testimonial," but stated that "[w]hatever else the term
25  covers, it applies at minimum to prior testimony at a preliminary hearing, before a grand jury, or at
26  a former trial; and to police interrogations." 541 U.S. at 68, 124 S.Ct. at 1374. The Court has since
27  stated that the trial court should look to the primary purpose of the statement to determine whether
28  it is testimonial. *Michigan v. Bryant*, --- U.S. ---, 131 S.Ct. 1143, 1157 (2011). *Bryant* held that

the statement of a shooting victim identifying the defendant as the person who shot him was non-testimonial because the primary purpose of the police in obtaining the statement was to deal with an ongoing emergency, rather than to obtain evidence for potential use at trial. Similarly, *Davis v. Washington*, 547 U.S. 813, 821, 126 S.Ct. 2266 (2006) held that statements made during a 911 call were non-testimonial because the primary purpose of the statements were to deal with an ongoing emergency.

In *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1267 (9th Cir. 2013), the Ninth Circuit summarized the definition of a "testimonial statement" as follows:

> A statement is testimonial when it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 310, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (internal quotation marks omitted). . . . The "primary purpose" of a statement is determined objectively. *Michigan v. Bryant,* ——U.S. ——, 131 S.Ct. 1143, 1156, 179 L.Ed.2d 93 (2011). Thus, "the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." *Id.*

In a conspiracy case, the admission of statements made by a co-conspirator in furtherance of the conspiracy do not violate the Confrontation Clause because such statements are also admissible against the defendant. *United States v. Bridgeforth*, 441 F.3d 864 (9th Cir. 2006) states in this regard as follows:

> The requirements for admission of a co-conspirator's statement under Federal Rule of Evidence 801(d)(2)(E) are identical to the requirements of the Confrontation Clause. *Bourjaily v. United States*, 483 U.S. 171, 182, 107 S.Ct. 2275, 97 L.Ed.2d 144 (1987). Therefore, if a statement is admissible under Rule 801(d)(2)(E), the defendant's right of confrontation is not violated. In order for a statement to qualify for admission as the statement of a co-conspirator, the following preliminary facts must be shown: (1) there was a conspiracy, (2) the defendant and the declarant were participants in the conspiracy, and (3) the statement was made by the declarant during and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E); *see Bourjaily*, 483 U.S. at 175, 107 S.Ct. 2775. The statement alone is insufficient to prove these preliminary facts. Fed.R.Evid. 801(d)2).

441 F.3d at 869.

. . .

The court stated that the foregoing rule survives *Crawford* because "co-conspirator statements are not testimonial." *Bridgeforth*, at 869 n. 1, quoting *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005).

Other federal circuits have held that statements made unwittingly by a non-testifying codefendant to an undercover officer or police informant are non-testimonial. In *United States v. Dale*, 614 F.3d 942 (8th Cir. 2010), the defendants were jointly tried for conspiracy to distribute cocaine and on two counts of murder. Prior to being charged with the subject crimes, defendant Dale was in jail awaiting trial in an unrelated criminal case. Law enforcement officers persuaded an associate of Dale who was incarcerated in the same jail to wear a wire and probe Dale for information relating to the murders. Dale made statements to the informant that implicated both himself and defendant Johnson in the crimes. At trial, the court admitted Dale's statements into evidence, but ordered that any references to Johnson be redacted. In rejecting Johnson's assertion that the admission of Dale's statements violated his Sixth Amendment rights, the court stated:

> Under any formulation of the rule, Dale's incriminating statements made to Smith were not testimonial. Indeed, it is clear enough that Dale had no idea Smith was wearing a wire, or that the incriminating statements he made to Smith would ultimately be used against him at trial. Had Dale known the authorities were listening in, he likely would not have admitted to committing two unsolved murders. In this sense, we cannot say that Dale, in making the statements, "would reasonably expect [the statements] to be used prosecutorially." *Id.* Nor can we say that an objective witness, in these circumstances, would "reasonably ... believe that the statement would be available for use at a later trial." *Id.* Thus, the critical distinction between *Bruton* and this case is the circumstances under which the out-of-court statement was made. Whereas in *Bruton* the incriminating statement was the product of a formal interrogation and therefore testimonial, the incriminating statements made by Dale here were made unwittingly, and not in anticipation by Dale of future use of the statements at trial. Under our present understanding of the confrontation right, governed by *Crawford,* the introduction of Dale's out of court statements did not violate Johnson's confrontation right.
>
> In so holding, we join many of our sister circuits, which have similarly concluded that the out-of-court statement of a co-defendant made unknowingly to a government agent is not "testimonial" within the meaning of *Crawford. See United States v. Udeozor,* 515 F.3d 260, 269–70 (4th Cir. 2008); *United States v. Watson,* 525 F.3d 583, 589 (7th Cir. 2008); *United States v. Underwood,* 446 F.3d 1340,

. . .

1347–1348 (11th Cir. 2006); *United States v. Hendricks,* 395 F.3d 173, 182–184 (3d Cir. 2005); *United States v. Saget,* 377 F.3d 223, 229–230 (2d Cir. 2004).

*United States v. Dale*, 614 F.3d at 956.

The First, Fifth and Sixth Circuits have also reached the same conclusion. *See United States v. Pelletier*, 666 F.3d 1, 9-11 (1st Cir. 2011); *Brown v. Epps*, 686 F.3d 281, 287-89 (5th Cir. 2012); *and United States v. Mooneyham*, 473 F.3d 280, 286-87 (6th Cir. 2007). *Brown v. Epps* notes that no circuit has reached the contrary conclusion. *Id.* at 288. District court decisions in the Ninth Circuit have also held that such statements are non-testimonial and therefore not governed by the Confrontation Clause. *See Zambrano v. Prosper*, 2011 WL 1532403, *15 (C.D.Cal. 2011) and *McCulloch v. Horel*, 2008 WL 755919, *10 (C.D.Cal. 2008).

In this case, the undercover agent who met with Defendant Prokop on May 22, 2002, portrayed herself as the owner of an income tax preparation business. There is no evidence that Mr. Prokop was aware that she was, in fact, a government agent and was recording their conversation. Mr. Prokop, therefore, had no objective reason to believe that his statements would be used in evidence at trial. His statements to the undercover agent were therefore clearly non-testimonial and their admission at trial will not violate Mr. Coolidge's or Mr. Rodrigues's rights under the Confrontation Clause of the Sixth Amendment.

The discussion between Mr. Prokop and the undercover agent primarily related to how Tax Break 2000 worked--in the context of the undercover agent potentially selling the product in her fictitious business. During the meeting, Mr. Prokop made reference to NADN, but NADN was not a significant part of the discussion. *See Motion to Sever (#272), Exhibit 19, Transcript,* pgs. 5-7, 15 (Bates Nos. US002256-58, US002266). There is also reference to a "Les Coolidge" at page 28 (Bates No. US002279) which may refer to Defendant Coolidge. Even assuming that Defendant Prokop's statements to the undercover agent are not admissible against Defendants Coolidge and Rodrigues under Fed.R.Evid. 801(d)(2)(E), any unfair prejudice can be avoided by instructing the jury that Defendant Prokop's statement may only be considered as evidence against him and not against the other defendants, and by redacting the references to NADN or Coolidge. *See United States v. Dale*, *supra,* (noting that trial judge redacted the references to the defendant Johnson in

1    Dale's recorded statement to the undercover officer.)

2          Defendant Coolidge states that the Government will introduce statements made by the
3    Government's cooperating witness Daniel Porter to Prokop as well as statements made by Prokop
4    to Porter prior to March 2002--the date when Coolidge became chief executive officer of NADN.
5    *Motion to Sever (#272), pg. 5.* The information provided by Defendant about these statements is
6    vague. To the extent that Coolidge claims these statements are governed by *Bruton*, however, they
7    also appear to be non-testimonial in nature and therefore not within the scope of the Confrontation
8    Clause.

9          The Government acknowledges that Defendant Prokop's statements during the interviews
10   with government agents on July 24, 2002, March 18, 2004, and December 19, 2004, and his
11   deposition testimony during a bankruptcy proceeding on August 3, 2004 are testimonial and
12   therefore subject to the requirements of the Confrontation Clause. The Government argues,
13   however, that introduction of these statements against Defendant Prokop at trial do not require a
14   severance of his trial from that of Defendants Coolidge and Rodrigues pursuant to *Bruton*. The
15   Government argues that *Bruton*, as limited by *Richardson v. Marsh*, applies only to the admission
16   of a codefendant's confession which also explicitly implicates the defendant. It asserts that during
17   his interviews with the government's agents, Defendant Prokop did not confess or admit that he or
18   the codefendants engaged in illegal conduct.

19         For the most part, the Government's characterization of Mr. Prokop's statements appears to
20   be accurate. During the proffer interview with the Government on December 19, 2004, however,
21   Defendant Prokop made statements that appear to implicate the codefendants, if not himself. *See,*
22   *e.g. Supplemental Brief (#311), Exhibit D, pg. 3.* The Government states, however, that it will only
23   introduce statements made by Mr. Prokop during the proffer interview in its rebuttal case "if
24   Prokop testifies contrary to any statements in the proffer session." *Notice of Intent to Introduce*
25   *Statements (#296), pg. 4.* If Mr. Prokop testifies at trial, he will of course be subject to cross-
26   examination by the Government and also by the Codefendants and, therefore, introduction of his
27   prior statements on rebuttal will not violate the Confrontation Clause or *Bruton*.
28   . . .

In his Supplemental Brief, Defendant Prokop asserts a Confrontation Clause violation if *his own* statements are introduced against him at trial. This assertion has no merit since Mr. Prokop "cannot claim that [he] was denied the opportunity to confront [himself]." *United States v. Nazemian*, 948 F.2d 522, 526 (9th Cir. 1991). *United States v. Orm Hieng*, 679 F.3d 1131, 1140 (9th Cir. 2012) further states that "[w]here ... [the] speaker is the defendant, the Sixth Amendment simply has no application because a defendant cannot complain that he was denied the opportunity to confront himself."

The Court concludes that the Government's intention to introduce prior statements made by the Defendants against them at trial will not violate their right to confront the witnesses against them or cause undue and unfair prejudice, so long as the Court provides limiting instructions to the jury that the Defendant's statement is only admissible against him and, if necessary, orders the redaction of references in the statements to Codefendants.[3] Severance of Defendants' trials pursuant to *Bruton* is therefore not required.

**2. Antagonistic Defenses**.

All three defendants argue that their trials should be severed because they have antagonistic defenses. Defendant Coolidge states that he intends to raise as an alternative defense that Prokop, Rodrigues and Porter conspired with each other to conceal from Coolidge the legal and technical problems with Mallforall (Tax Break 2000). He will also contend that Prokop, Rodrigues and Porter were aware of the potential legal problems with Tax Break 2000 raised in an internal NADN memorandum, that they conspired to obtain a fraudulent tax opinion letter to refute the memorandum, and that they concealed these matters from him. *Coolidge Motion to Sever (#272), pgs. 7-8*. Defendant Prokop likewise asserts that Coolidge, Rodrigues and Porter conspired with each other to conceal from Prokop the legal and technical problems with Tax Break 2000.

The standard for granting separate trials based on the defendants' antagonistic defenses is set forth in *United States v. Angwin*, 271 F.3d 786 (9th Cir. 2001) as follows:

---

[3] The Undersigned makes no finding whether Defendant Prokop's statements during the May 22, 2002 meeting with the undercover officer are admissible against the other Defendants as statements of a co-conspirator, in which case a limiting instruction will not be required.

> To warrant severance on the basis of antagonistic defenses, codefendants must show that their defenses are irreconcilable and mutually exclusive. *See United States v. Sherlock,* 962 F.2d 1349, 1363 (9th Cir. 1992). Defenses are mutually exclusive when "acquittal of one codefendant would necessarily call for the conviction of the other." *United States v. Tootick,* 952 F.2d 1078, 1081 (9th Cir. 1991); *see United States v. Throckmorton,* 87 F.3d 1069, 1072 (9th Cir. 1996) (noting that "a defendant must show that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant"). Even when defendants present antagonistic defenses, such defenses "are not prejudicial *per se.*" *Zafiro v. United States,* 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *see id.* at 539, 113 S.Ct. 933 (noting that "a district court should grant a severance under [Federal] Rule [of Criminal Procedure] 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilty or innocence").

271 F.3d at 795.

In *United States v. Sherlock*, 962 F.2d 1349, 1363 (9th Cir. 1992), the court stated that "[t]he mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating the other does not generate the kind of prejudice that mandates severance."

In *United States v. Voigt*, 89 F.3d 1050, 1094 (3rd Cir. 1996), the Third Circuit stated that in determining whether mutually antagonistic defenses exist such that severance may be required, the court must ascertain whether "the jury could reasonably construct a sequence of events that accommodates the essence of all [defendants'] defenses." The court noted that while mutually antagonistic defenses have been much discussed in theory, only rarely have courts found that they exist in practice. Far more frequently, courts have concluded that the asserted defenses, while in conflict with one another, are not so irreconcilable that "[t]he jury could not have been able to assess the guilt or innocence of the defendants on an individual and independent basis." (citations omitted). *Voigt* further stated:

> Moreover, courts have consistently held that finger-pointing and blame-shifting among coconspirators do not support a finding of mutually antagonistic defenses. *See Provenzano,* 688 F.2d at 198 (affirming denial of motion to sever where all defendants blamed one coconspirator on the ground that these defenses were not antagonistic, because if jury had believed that only one defendant was to blame there would have been a failure of proof on the conspiracy charges); *see also United States v. Smith,* 44 F.3d 1259, 1266–67 (4th

15

> Cir.) (affirming denial of motion to sever where defendant's codefendants claimed that he ran the whole scheme and they were just victims of his criminal influence), *cert. denied,* 514 U.S. 1113, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995); *United States v. Linn,* 31 F.3d 987, 992 (10th Cir. 1994) (affirming denial of motion to sever where each coconspirator defended himself by blaming the others on the ground that the jury could have believed all defendants' theories and acquitted them all); *United States v. Rivera,* 6 F.3d 431, 438 (7th Cir. 1993) (affirming denial of motion to sever where codefendants in a drug conspiracy all claimed ignorance and blamed each other on ground that "plain and simple blame-shifting" does not necessarily prevent jury from making reliable judgment about guilt or innocence), *cert. denied,* 510 U.S. 1130, 114 S.Ct. 1098, 127 L.Ed.2d 411 (1994); *United States v. Barber,* 442 F.2d 517, 530 (3d Cir.) (holding that "the mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating another" are insufficient grounds to require severance), *cert. denied,* 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971). These cases illustrate the well-settled principle that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro,* 506 U.S. at 540, 113 S.Ct. at 938.

89 F.3d at 1095.

In this case, the jury could arguably conclude that all three Defendants are guilty because they all participated in the scheme to sell Tax Break 2000 which they each knew was an illegal and fraudulent tax shelter. Conversely, the jury may conclude that none of the Defendants are guilty if it accepts their defenses that Tax Break 2000 was a lawful tax avoidance device, or that Defendants acted in a good faith belief that it was a legal method to reduce tax liability. Alternatively, the jury could reach different verdicts based on its assessment of each Defendant's conduct, knowledge and culpability. Defendants' anticipated finger-pointing and blame-shifting carries the risk of sinking everyone's ship. Such defenses, however, do not rise to the level of irreconcilable and mutually exclusive defenses that require separate trials.

Defendants have also generally asserted that there will be a significant body of evidence that is admissible against the other defendants, but which is not admissible against the movant. The Government argues, however, that evidence which shows the background and development of the alleged conspiracy is admissible as to all defendants to place the charges in context and to explain the relationship of the parties to the alleged overt acts and transactions. *Opposition (#290), pgs. 10-11*, citing *United States v. Hoekler*, 765 F.2d 1422, 1426 (9th Cir. 1985). *See also United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). The Government again argues that acts or

16

statements of co-conspirators in furtherance of the conspiracy are admissible against each defendant even if the acts or statements occurred before the defendant joined the conspiracy or he was unaware of them. *Id.* at pg. 11, citing *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180 (1946), and *United States v. Schmit*, 881 F.2d 608, 613 (9th Cir. 1989).

The Government acknowledges that courts have granted severance when the charges brought against the defendants or the weight of the evidence supporting each charge are wholly disparate or disproportionate. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 846 (9th Cir. 1994), citing *United States v. Sampol*, 636 F.2d 621, 642-51 (D.C.Cir. 1980). *See also United States v. Brady*, 579 F.2d 1121, 1128 (9th Cir. 1978) ("While a great disparity in proof may be sufficient to allow a severance in certain cases, the fact that the evidence against one codefendant is more damaging than the evidence against another one is not a ground for severance."). The Government argues that the Defendants in this case, Mr. Coolidge, Mr. Rodrigues and Mr. Prokop, held significant positions in Oryan or NADN and were significant actors in the alleged conspiracy. Although the weight of the evidence to be presented against each Defendant may vary, the Government argues that there is not such a disparity in the Defendants' level of involvement in the alleged conspiracy or in the evidence against them as to warrant separate trials. Defendants, who have the high burden to demonstrate unfair prejudice justifying severance, have not refuted the Government's assertions in this regard.

### **CONCLUSION**

Based on the foregoing, the Court concludes that severance is not required in this case based on the Defendants' respective rights to confront the witnesses against them, and in light of *Bruton v. United States.* The Court is satisfied that prejudice resulting from the admission of a prior statement of a Defendant, which is not also admissible against the Codefendants, can be avoided or cured by giving of appropriate limiting instructions and by redaction of the statements where necessary and appropriate. The Court also finds that the Defendants' defenses are not irreconcilable and mutually exclusive such as to require severance on that ground. Accordingly,

. . .

. . .

**IT IS HEREBY ORDERED** that Weston Coolidge's Motion to Sever His Trial (#272) and Defendant Joseph Prokop's Motion to Sever Trial (#280), and Defendant Alan Rodrigues respective Joinders in those motions (#277 and #282), are **denied**.

DATED this 19th day of March, 2014.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge